(Slip Opinion) OCTOBER TERM, 2023 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## WILKINSON *v.* GARLAND, ATTORNEY GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 22–666.   Argued November 28, 2023—Decided March 19, 2024

Congress gives immigration judges discretionary power to cancel the removal of a noncitizen and instead permit the noncitizen to remain in the country lawfully.  8 U. S. C. §§1229b(a)–(b).  An IJ faced with an application for cancellation of removal proceeds in two steps: The IJ must decide first whether the noncitizen is eligible for cancellation of removal under the statutory criteria.  If the IJ finds the noncitizen statutorily eligible, the IJ must then decide whether to exercise discretion and grant relief.  For determining eligibility, Congress has enumerated four statutory criteria, one of which requires the noncitizen to "establis[h] that removal would result in exceptional and extremely unusual hardship to [the noncitizen's] spouse, parent, or child," who is a U. S. citizen or lawful permanent resident.  §1229b(b)(1)(D).

   Petitioner Situ Kamu Wilkinson was arrested and detained by Immigration and Customs Enforcement for remaining in the United States beyond the expiration of his tourist visa.  Wilkinson applied for cancellation of removal based in part on hardship to his 7-year-old, U. S.-born son, M., who suffers from a serious medical condition and relies on Wilkinson for emotional and financial support.  To meet the hardship standard, Wilkinson had to show that M. "would suffer hardship that is substantially different from or beyond that which would ordinarily be expected to result from [his] removal."  *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 62.  Considering all of the hardship factors presented by Wilkinson in the aggregate, the IJ held that M.'s situation did not meet the statutory standard for "exceptional and extremely unusual" hardship and denied Wilkinson's application.  The Board of Immigration Appeals affirmed.  The Third Circuit held that it lacked the jurisdiction necessary to review the IJ's discretionary hardship determination.  This Court granted certiorari to determine

whether the IJ's "exceptional and extremely unusual" hardship deter-
mination is a mixed question of law and fact reviewable under
§1252(a)(2)(D) or whether that determination is discretionary and
therefore unreviewable under §1252(a)(2)(B)(i).

*Held*:  The Third Circuit erred in holding that it lacked jurisdiction to
review the IJ's determination in this case.  Pp. 7–16.

    (a) The Third Circuit held that it lacked jurisdiction on the basis of
§1252(a)(2)(B)(i), which makes unreviewable any "judgment[s] regard-
ing the granting of [discretionary] relief" under §1229b's cancellation
of removal provision.  Section 1252(a)(2)(D), however, restores juris-
diction to review "questions of law."  The interaction between these two
provisions is governed by two of this Court's previous cases: *Guerrero-
Lasprilla* v. *Barr*, 589 U. S. 221, and *Patel* v. *Garland*, 596 U. S. 328.
In *Guerrero-Lasprilla*, the Fifth Circuit reasoned that whether a
noncitizen acted diligently in attempting to reopen removal proceed-
ings for purposes of equitable tolling was a question of fact, not a ju-
risdiction-restoring "questio[n] of law".  This Court reversed, holding
that "questions of law" in §1252(a)(2)(D) included mixed questions of
law and fact.  589 U. S., at 225. The Court rejected the Government's
argument that "questions of law" referred only to mixed questions that
are primarily legal rather than primarily factual.  Then, in *Patel*, this
Court affirmed an Eleventh Circuit holding that it lacked jurisdiction
to review an IJ's factual credibility determinations that fell within
§1252(a)(2)(B)(i)'s jurisdictional bar.  In so doing, the Court held that
§1252(a)(2)(D) did not restore jurisdiction in the case because "ques-
tions of fact" are indisputably not "questions of law."  Pp. 7–11.

    (b) Wilkinson argues that §1252(a)(2)(D) restores jurisdiction in this
case because the threshold question whether a noncitizen is statutorily
eligible for cancellation of removal requires a court to assess whether
an IJ correctly applied the statutory standard to a given set of facts.
*Guerrero-Lasprilla* compels the conclusion that the application of the
statutory "exceptional and extremely unusual hardship" standard to a
given set of facts presents a mixed question of law and fact.  A mixed
question may require "primarily legal or factual work," and just be-
cause it may require a court to immerse itself in facts does not trans-
form the question into one of fact.  *U. S. Bank N. A.* v. *Village at Lak-
eridge, LLC*, 583 U. S. 387, 396.

    In this case, the application of the hardship standard—which re-
quires an IJ to evaluate a number of factors in determining whether
any hardship to a U. S. citizen or permanent-resident family member
is substantially different from what would normally be expected in the
removal of a close family member—concededly requires a close exami-
nation of the facts.  As in *Guerrero-Lasprilla,* a mixed question that
requires close engagement with the facts is still a mixed question, and

therefore a "questio[n] of law" reviewable under §1252(a)(2)(D). And as in *Patel*, the IJ's underlying factual determinations that Wilkinson was credible or that M. had a serious medical condition would be unreviewable factual questions under §1252(a)(2)(D). Pp. 11–12.

(c) The Government's counterarguments are unpersuasive. First, nothing in *Guerrero-Lasprilla* or this Court's other precedents limits that case solely to judicially created standards like the "due diligence" standard for equitable tolling. And this Court has frequently observed that the application of a "statutory standard" presents a mixed question of law and fact. See, *e.g., Pullman-Standard* v. *Swint*, 456 U. S. 273, 289, n. 19. Second, the case of *Williamsport Wire Rope Co.* v. *United States*, 277 U. S. 551, on which the Government relies, has no relevance to the question presented here on §1252(a)(2)(D), and the Government provides no basis for porting the interpretation of "exceptional hardship" in that case to this one. Nor is the Government's argument from the statutory history of the "hardship requirement" any more persuasive. Finally, the argument that a primarily factual mixed question is a question of fact was previously rejected in *Guerrero-Lasprilla*, and nothing in §1252(a)(2)(D) supports the Government's view that the phrase "questions of law" is so limited. Pp. 12–15.

Reversed in part, vacated in part and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which KAGAN, GORSUCH, KAVANAUGH, and BARRETT, JJ., joined. JACKSON, J., filed an opinion concurring in the judgment. ROBERTS, C. J., filed a dissenting opinion. ALITO, J., filed a dissenting opinion in which ROBERTS, C. J., and THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the
United States Reports. Readers are requested to notify the Reporter of
Decisions, Supreme Court of the United States, Washington, D. C. 20543,
pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

---

No. 22–666

---

## SITU KAMU WILKINSON, PETITIONER *v.* MERRICK B. GARLAND, ATTORNEY GENERAL

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[March 19, 2024]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

To be eligible for cancellation of removal and adjustment to lawful permanent resident status, a noncitizen must meet four statutory criteria. The last requires a showing that the noncitizen's removal would result in "exceptional and extremely unusual hardship" to a U. S.-citizen or permanent-resident family member. 8 U. S. C. §1229b(b)(1)(D). Petitioner Situ Kamu Wilkinson argues that his removal would cause exceptional and extremely unusual hardship to his U. S.-citizen son, who suffers from a serious medical condition and relies on Wilkinson for emotional and financial support. An Immigration Judge (IJ) held that this hardship did not rise to the level required by statute and the Board of Immigration Appeals (BIA) affirmed. The Third Circuit dismissed Wilkinson's petition for review, holding that it lacked jurisdiction to review the IJ's hardship determination.

The question in this case is whether the IJ's hardship determination is reviewable under §1252(a)(2)(D), which gives Courts of Appeals jurisdiction to review "questions of law." This Court holds that it is. The application of a statutory legal standard (like the exceptional and extremely

unusual hardship standard) to an established set of facts is a quintessential mixed question of law and fact. *Guerrero-Lasprilla* v. *Barr* held that such questions are reviewable under §1252(a)(2)(D). 589 U. S. 221, 225 (2020). Accordingly, this Court reverses.

## I

### A

When an IJ finds a noncitizen removable for violating the immigration laws, Congress provides several avenues for discretionary relief. Relevant here, an IJ may "cancel removal" of a noncitizen who meets certain statutory criteria. Immigration and Nationality Act, 66 Stat. 163, as added and amended, 8 U. S. C. §§1229b(a)–(b). Cancellation of removal permits a noncitizen to remain in the country lawfully. An IJ deciding a noncitizen's request for cancellation of removal proceeds in two steps. First, the IJ must decide whether the noncitizen is eligible for cancellation under the relevant statutory criteria. Second, an IJ decides whether to exercise his discretion favorably and grant the noncitizen relief in the particular case.[1] A noncitizen bears the burden of proving that he both "satisfies the applicable eligibility requirements" and "merits a favorable exercise of discretion." §1229a(c)(4)(A).

Congress enumerated certain statutory criteria to govern the first step of an IJ's cancellation-of-removal determination. For a noncitizen who never received lawful permanent residence (*i.e.*, a green card), those criteria are stringent. He is eligible for cancellation of removal only if he meets four requirements: (1) he "has been physically present in the United States for a continuous period of not less than 10 years" before he applies; (2) he "has been a person of good moral character during such period"; (3) he has not been

―――――――――
[1] This second step is not perfunctory. Congress has imposed a statutory cap of 4,000 noncitizens each fiscal year who can have discretion exercised in their favor. 8 U. S. C. §1229b(e).

convicted of certain criminal offenses; and (4) he "establishes that removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or child," who is a U. S. citizen or lawful permanent resident. §§1229b(b)(1)(A)–(D). After determining whether a noncitizen meets these criteria, an IJ proceeds to step two and decides whether to exercise discretion to cancel the order of removal in a particular case.

### B

Wilkinson was born in Trinidad and Tobago. After police officers beat, robbed, and threatened to kill him in 2003, Wilkinson fled to the United States on a tourist visa. He has remained in this country ever since, beyond the expiration of his visa. In 2013, Wilkinson had a son, M., with his girlfriend Kenyatta Watson. Both M. and Watson are U. S. citizens.

Wilkinson lived in Pennsylvania and worked to support M. and Watson. M. lived with Wilkinson and Watson for the first two years of his life. Then, because Wilkinson could not take care of his son and work at the same time, he and Watson decided M. would have a better quality of life in New Jersey with his mother and her mother. Wilkinson took the train to visit his son every weekend and provided almost half his monthly wages ($1,200 per month) in informal child support. M. suffers from severe asthma, which requires hospital treatment multiple times a year. Wilkinson helped M. with his inhaler and medications and knew his regimen well. Watson suffers from depression and does not work, so she also relies on Wilkinson's financial and childcare support.

Wilkinson worked as a handyman and a laborer in construction. In 2019, police found drugs in a house where he had been hired to work on repairs. Despite Wilkinson's protests that neither the house nor the drugs were his, the po-

lice arrested him. When Wilkinson appeared in a Pennsylvania courthouse to contest the charges, he was arrested and detained by federal immigration officers. The criminal charges were ultimately withdrawn.

M. was seven years old when Immigration and Customs Enforcement detained his father. Afterwards, M. began to exhibit behavioral issues. M. became sad, acted out, and broke things. M.'s teacher texted Watson every day saying that M. was no longer focused and needed to talk to a counselor. Wilkinson called his son every other day from immigration detention. When M. hung up the phone, he cried and said he wanted his father to come home.

## C

Wilkinson conceded before the IJ that he was removable under §1227(a)(1)(B) for overstaying his tourist visa. He asked for relief from that removal, claiming eligibility for asylum, withholding of removal, and protection under the Convention Against Torture. Relevant here, he also applied for cancellation of removal based on hardship to his U. S.-citizen son, M. The U. S. Department of Homeland Security (DHS) stipulated that Wilkinson met the first three statutory criteria for eligibility (namely, continuous physical presence, good moral character, and lack of specific criminal bars) but contested the last: exceptional and extremely unusual hardship to M. Wilkinson, Watson, and M.'s grandmother all testified in support of Wilkinson's applications for relief.

In evaluating Wilkinson's applications, the IJ found Wilkinson credible (despite DHS's attempts to impeach him), and credited the testimonies of each witness in full. The IJ then turned to cancellation of removal and recited the standard for exceptional and extremely unusual hardship adopted by the BIA. To meet this standard, a noncitizen "must demonstrate that a qualifying relative would suffer hardship that is substantially different from or beyond that

which would ordinarily be expected to result from their removal, but need not show that such hardship would be 'unconscionable.'" App. to Pet. for Cert. 26a (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 62 (BIA 2021)). In evaluating whether a noncitizen meets this standard, IJs must consider a range of factors, including the age and health of the qualifying family member. App. to Pet. for Cert. 26a–27a (citing *In re Andaloza-Rivas*, 23 I. & N. Dec. 319, 323–324 (BIA 2002); *Monreal-Aguinaga*, 23 I. & N. Dec., at 63). "[A]ll hardship factors should be considered in the aggregate to determine whether the qualifying relative will suffer hardship that rises to the level of 'exceptional and extremely unusual.'" App. to Pet. for Cert. 27a (quoting *Monreal-Aguinaga*, 23 I. & N. Dec., at 64).

The IJ then applied this standard to the established facts. He found that M.'s asthma was a serious medical condition and that Wilkinson provided emotional and financial care to his son. He found that M. had been struggling since Wilkinson's detention. Nevertheless, the IJ held that M. did not meet the statutory standard for exceptional and extremely unusual hardship. The IJ reasoned that M. received medical insurance from the government and that he and his family might qualify for other public assistance if necessary. Although Wilkinson provided emotional support, the IJ noted that M. had lived without Wilkinson's "daily presence" for most of M.'s life. App. to Pet. for Cert. 28a. The IJ recognized that M. and his mother would suffer some financial hardship from Wilkinson's removal. Yet the IJ reasoned that Wilkinson had not provided evidence that he would be unable to work and support his family from Trinidad and Tobago. The IJ also noted that M.'s mother was able to work even though she had primarily been caring for M. He reasoned that M.'s grandmother, who had helped care for M. before, could continue to do so.

Based on "the aggregate of the factors" that he "weighed," the IJ found that any financial or emotional hardship was

not "beyond that which would normally be expected from the removal of a parent and provider." *Id.,* at 29a (citing *Monreal-Aguinaga*, 23 I. & N. Dec., at 65). Ultimately, the IJ held that "the evidence of hardship" in the case did not rise to the level of "exceptional and extremely unusual hardship." App. to Pet. for Cert. 29a. Because he held that Wilkinson was statutorily ineligible for cancellation of removal, the IJ did "not reach determining whether or not to exercise [his] discretion to grant the application for cancellation of removal." *Ibid.* The IJ denied Wilkinson's application. Wilkinson appealed the IJ's decision to the BIA. The BIA affirmed without issuing an opinion.

Wilkinson petitioned the Third Circuit for review, arguing that the court had jurisdiction to review the BIA's hardship determination as a mixed question of law and fact. The Third Circuit held that because the hardship determination was "discretionary," it lacked jurisdiction to review it. *Id.,* at 3a (citing §1252(a)(2)(B)(i); *Patel* v. *Garland*, 596 U. S. 328 (2022)). It therefore dismissed that part of Wilkinson's petition.

Wilkinson asked this Court to grant certiorari to resolve whether the IJ's "determination that a given set of established facts does not rise to the statutory standard of 'exceptional and extremely unusual hardship' is a mixed question of law and fact reviewable under §1252(a)(2)(D) . . . or whether this determination is a discretionary judgment call unreviewable under §1252(a)(2)(B)(i)." Pet. for Cert. i. This Court granted certiorari. 600 U. S. ___ (2023). The Courts of Appeals are split on this question.[2] This Court now holds

---

[2] Three Circuits have held that courts of appeals have jurisdiction over hardship determinations because they are mixed questions of law and fact. See *Arreola-Ochoa* v. *Garland*, 34 F. 4th 603, 610 (CA7 2022); *Singh* v. *Rosen*, 984 F. 3d 1142, 1150 (CA6 2021); *Gonzalez Galvan* v. *Garland*, 6 F. 4th 552, 555 (CA4 2021). Six Circuits have indicated that courts of appeals have no jurisdiction over the BIA's hardship determinations. See *Gonzalez-Rivas* v. *Garland*, 53 F. 4th 1129, 1132 (CA8 2022); *Flores-*

that the application of the exceptional and extremely unusual hardship standard to a given set of facts is reviewable as a question of law under §1252(a)(2)(D).

## II

Section 1252(a)(2)(D) provides that a court of appeals may consider final orders of removal via petitions raising "constitutional claims or questions of law." In *Guerrero-Lasprilla*, this Court held that "the statutory phrase 'questions of law' includes the application of a legal standard to undisputed or established facts," also referred to as mixed questions of law and fact. 589 U. S., at 227. The statutory criterion of "exceptional and extremely unusual hardship" is a legal standard that an IJ must, at the first step, apply to a set of established facts. This Court therefore holds that it is a "questio[n] of law" over which §1252(a)(2)(D) provides judicial review.

The hardship determination in this case was not discretionary. Because the IJ held that M.'s hardship did not satisfy the statutory eligibility criteria, he never reached the second step and exercised his unreviewable discretion to cancel or decline to cancel Wilkinson's removal. The Third Circuit therefore erred in holding that it lacked jurisdiction to review the IJ's determination in this case.

## A

Section 1252 generally grants federal courts the power to review final orders of removal. §1252(a)(1). It then strips courts of jurisdiction for certain categories of removal order.

---

*Alonso* v. *United States Atty. Gen.*, 36 F. 4th 1095, 1100 (CA11 2022) (*per curiam*); *Castillo-Gutierrez* v. *Garland*, 43 F. 4th 477, 481 (CA5 2022) (*per curiam*); *Aguilar-Osorio* v. *Garland*, 991 F. 3d 997, 999 (CA9 2021) (*per curiam*); *Hernandez-Morales* v. *Attorney Gen. U. S.*, 977 F. 3d 247, 249 (CA3 2020); *Galeano-Romero* v. *Barr*, 968 F. 3d 1176, 1183–1184 (CA10 2020).

§1252(a)(2). Finally, it restores jurisdiction to review "constitutional claims or questions of law." §1252(a)(2)(D).[3]

Relevant here, §1252(a)(2)(B)(i) strips courts of jurisdiction over "judgment[s] regarding the granting of [discretionary] relief under section . . . 1229b." Section 1229b governs cancellation of removal. Section 1252(a)(2)(B)(i) therefore strips courts of jurisdiction over a "judgment" on cancellation of removal. The Third Circuit held that it had no jurisdiction over the part of Wilkinson's petition related to the hardship determination on this basis.

That holding ignores §1252(a)(2)(D), which restores jurisdiction to review "questions of law." Two clear rules govern the interaction between §1252(a)(2)(B)(i) (which strips jurisdiction over judgments regarding discretionary relief) and §1252(a)(2)(D) (which restores it for legal questions), laid out in two of this Court's previous cases: *Guerrero-Lasprilla* and *Patel*. *Guerrero-Lasprilla* held that petitions raising mixed questions of law and fact are always reviewable as questions of law under §1252(a)(2)(D). 589 U. S., at 225. *Patel* held that questions of fact underlying denials of discretionary relief are unreviewable under both §1252(a)(2)(B)(i) and §1252(a)(2)(D). 596 U. S., at 343, 347. Those two rules resolve this case.

In *Guerrero-Lasprilla*, §1252(a)(2)(C) stripped courts of jurisdiction over two noncitizens' orders of removal via a different provision targeting certain criminal convictions. Those noncitizens had sought to reopen their immigration

---

[3] This scheme is the result of this Court's decision in *INS* v. *St. Cyr*, 533 U. S. 289 (2001), which construed earlier versions of the jurisdiction-stripping provisions as permitting review in habeas corpus proceedings "to avoid the serious constitutional questions that would be raised by a contrary interpretation." *Guerrero-Lasprilla* v. *Barr*, 589 U. S. 221, 232 (2020) (citing *St. Cyr*, 533 U. S., at 299–305). Congress enacted §1252(a)(2)(D) to ensure the constitutionality of its jurisdiction-stripping provisions. See 589 U. S., at 232–234.

cases after being removed because a change in the law regarding their criminal convictions rendered them newly eligible for discretionary relief. Although the 90-day time limit to reopen their cases had expired, they argued that the limit should be "equitably tolled." 589 U. S., at 225–226. The BIA denied their request, concluding that each had failed to demonstrate the requisite due diligence. When the noncitizens petitioned the Fifth Circuit for review of that decision, the court held that it lacked jurisdiction to decide the question. The Fifth Circuit reasoned that whether a noncitizen acted diligently in attempting to reopen removal proceedings for purposes of equitable tolling was a question of fact, not a "questio[n] of law" that would restore jurisdiction under §1252(a)(2)(D).

This Court reversed. The Court held that "questions of law" in §1252(a)(2)(D) included mixed questions of law and fact. *Guerrero-Lasprilla*, 589 U. S., at 225. The "application of a legal standard to undisputed or established facts" is a mixed question. *Ibid.* Whether the BIA had correctly applied the equitable tolling due diligence standard to the facts was therefore a question of law reviewable by a court of appeals.

In so doing, this Court rejected the Government's primary argument that "questions of law" referred only to mixed questions that are primarily legal rather than primarily factual. Such an interpretation, the Court reasoned, would "forbid review of any [BIA] decision applying a properly stated legal standard, irrespective of how mistaken that application might be." *Id.*, at 236. This Court also rejected the Government's alternative argument that "questions of law" should be limited to "'pure'" questions of law based on the statutory context, history, and relevant precedent. *Id.*, at 230–234. Finally, the Court rejected the Government's argument that interpreting "questions of law" to cover all mixed questions would "undercut Congress' efforts to severely limit and streamline judicial review." *Id.*,

at 235.  Section 1252(a)(2)(D) had no effect on the unreview-ability of factual determinations which, as the Court noted, are "an important category in the removal context."  *Ibid.*

The issue of questions of fact came before this Court in *Patel*.  There, the noncitizen checked a box in his applica-tion for a state driver's license indicating that he was a U. S. citizen when he was not.  596 U. S., at 333.  Because of that misrepresentation, he became statutorily inadmissible to adjust his status to permanent resident.  Later, in removal proceedings, the noncitizen conceded he was removable but argued that he mistakenly checked the box and lacked the statutory *mens rea*.  The IJ found him not credible, based partly on the fact that he had a strong incentive to deceive state officials about his citizenship status to obtain a state driver's license.  The noncitizen appealed, arguing that the basis for the credibility determination was clearly wrong: Under state law, he was entitled to a driver's license with-out being a citizen.  The BIA determined that the IJ's fac-tual findings were not clearly erroneous and dismissed the appeal.  The Eleventh Circuit dismissed the petition for re-view, holding that it lacked jurisdiction under §1252(a)(2)(B)(i), which strips courts of jurisdiction to re-view "'any judgment regarding the granting of relief'" un-der the adjustment-of-status provision.  *Id.*, at 335.  The court concluded that both whether petitioner had testified credibly and whether he had subjectively intended to mis-represent himself as a citizen were factual determinations that fell within §1252(a)(2)(B)(i)'s jurisdictional bar.

This Court affirmed.  The Court held that these factual findings, which formed the basis for the denial of relief, fell within §1252(a)(2)(B)(i)'s jurisdiction-stripping provision. Further, §1252(a)(2)(D) did not restore jurisdiction, because "questions of fact" are indisputably not "questions of law." *Ibid.*  Relying on *Guerrero-Lasprilla*, the Court noted that questions of fact were the "major remaining category" for which Congress could still strip courts of jurisdiction.  596

U. S., at 339–340.

## B

Wilkinson does not dispute that §1252(a)(2)(B)(i) generally strips courts of jurisdiction to review cancellation-of-removal decisions. He argues, instead, that §1252(a)(2)(D) restores jurisdiction in this case because the threshold question whether a noncitizen is statutorily eligible for cancellation of removal requires a court to assess whether an IJ correctly applied the statutory standard to a given set of facts. This Court agrees that the application of the statutory "exceptional and extremely unusual hardship" standard to a given set of facts presents a mixed question of law and fact. *Guerrero-Lasprilla* compels this conclusion.

*Guerrero-Lasprilla* held that "the statutory term 'questions of law'" in §1252(a)(2)(D) "includes the application of a legal standard to established facts." 589 U. S., at 234. That term included the application of the due diligence standard for equitable tolling to a given set of facts. Similarly, the "exceptional and extremely unusual hardship" standard in §1229b(b)(1)(D) is a legal standard that an IJ applies to facts. The standard may require an IJ to closely examine and weigh a set of established facts, but it is not a factual inquiry. It is, inescapably, a mixed question of law and fact.

Mixed questions "are not all alike." *U. S. Bank N. A.* v. *Village at Lakeridge, LLC*, 583 U. S. 387, 395–396 (2018). A mixed question may require "primarily legal or factual work." *Id.*, at 396. It may "require courts to expound on the law . . . by amplifying or elaborating on a broad legal standard." *Ibid.* Or it may "immerse courts in case-specific factual issues—compelling them to marshal and weigh evidence." *Ibid.* That a mixed question requires a court to immerse itself in facts does not transform the question into one of fact. It simply suggests a more deferential standard of review.

As interpreted by the BIA, the application of the "exceptional and extremely unusual hardship" standard requires an IJ to evaluate a number of factors in determining whether any hardship to a U. S.-citizen or permanent-resident family member is "substantially different from, or beyond, that which would normally be expected from the deportation" of a "close family membe[r]." *Monreal-Aguinaga*, 23 I. & N. Dec., at 65. That application concededly requires a close examination of the facts. Yet that was also true of the due diligence standard in *Guerrero-Lasprilla*, which required a court to evaluate whether a noncitizen was adequately conscientious in his pursuit of a filing deadline. A mixed question that requires close engagement with the facts is still a mixed question, and it is therefore a "questio[n] of law" that is reviewable under §1252(a)(2)(D).

Under *Patel*, of course, a court is still without jurisdiction to review a factual question raised in an application for discretionary relief. As in *Patel*, that would include the IJ's underlying factual determination that Wilkinson was credible, or the finding that M. had a serious medical condition. When an IJ weighs those found facts and applies the "exceptional and extremely unusual hardship" standard, however, the result is a mixed question of law and fact that is reviewable under §1252(a)(2)(D).

## C

The Government's counterarguments largely seek to relitigate *Guerrero-Lasprilla*. This Court is unpersuaded.

First, the Government argues that the statutory standard is not a legal standard at all. It asks this Court to limit *Guerrero-Lasprilla* solely to judicially created standards like the "due diligence" standard for equitable tolling. Nothing in *Guerrero-Lasprilla* or this Court's other precedents supports such a distinction. This Court has frequently observed that the application of a "statutory standard" presents a mixed question of law and fact. See, *e.g.*,

*Pullman-Standard* v. *Swint*, 456 U. S. 273, 289, n. 19 (1982) (defining a mixed question as asking whether "the historical facts . . . satisfy the statutory standard"); *Ornelas* v. *United States*, 517 U. S. 690, 696–697 (1996) (same); *U. S. Bank*, 583 U. S., at 394 (same). *Guerrero-Lasprilla* itself reflected this understanding. See 589 U. S., at 232 (reasoning that §1252(a)(2)(D) was intended to preserve the kind of review traditionally available in a habeas proceeding, including review of the "erroneous application or interpretation of statutes" (emphasis deleted; internal quotation marks omitted)). This Court sees no reason to treat the statutory hardship standard here any differently from a judicially created "due diligence" standard.

Second, the Government argues that a 1928 case, *Williamsport Wire Rope Co.* v. *United States*, 277 U. S. 551, and the statutory history of the hardship requirement preclude review. In *Williamsport*, the Court evaluated a wartime tax-relief provision that was in effect from 1919 to 1921. That provision allowed the Internal Revenue Service Commissioner to use a "'special method'" for determining a company's tax burden if computation under the regular scheme would work "'an exceptional hardship.'" *Id.*, at 558. The statute granted the Commissioner power to act, for the most part, without any justification. The Commissioner did not have to make findings of fact, and had to create a "meagre record" only if he ordered a special assessment. *Id.*, at 559. This Court therefore concluded that the IRS's "exceptional hardship" determination was a question of administrative discretion not subject to judicial review. *Ibid.*

*Williamsport* has no relevance to the question presented here. The Government provides no basis for why this Court should port the interpretation of "exceptional hardship" from a 1919 tax-relief provision to a 1996 immigration-relief provision. An IJ applying the "exceptional and extremely unusual hardship" standard must create an extensive record of his decisionmaking, including detailed fact-

finding and the application of BIA precedent. Additionally, *Williamsport* did not evaluate the term "exceptional hardship" against the background of a jurisdiction-restoring provision like §1252(a)(2)(D), enacted in 2005.

The Government's argument from the statutory history of the "hardship requirement" is no more persuasive. Brief for Respondent 26. The precursor to cancellation of removal was suspension of deportation. That relief was available only to a "person whose deportation would, *in the opinion of the Attorney General*, result in exceptional and extremely unusual hardship" to the noncitizen himself or a qualifying relative. §§244(a)(1)–(5), 66 Stat. 214–216 (emphasis added). The Government argues that this Court should read that discretion back into the current version of the statute.

The Government's request to reinstate statutory language removed by Congress is particularly unavailing because Congress chose to retain similar language in provisions governing other forms of discretionary relief subject to §1252(a)(2)(B)'s bar on judicial review. See, *e.g.*, §1182(h)(1)(B) (allowing relief "if it is established to the satisfaction of the Attorney General that the [noncitizen's] denial of admission would result in extreme hardship to the United States citizen"); §1182(i)(1) (allowing relief "if it is established to the satisfaction of the Attorney General that the refusal of admission . . . of such [noncitizen] would result in extreme hardship to the citizen . . . spouse or parent"); §1255(*l*)(1) (allowing relief if "in the opinion of the Secretary of [DHS], in consultation with the Attorney General, as appropriate . . . the [noncitizen] would suffer extreme hardship involving unusual and severe harm upon removal"). Congress could have, but did not, do the same with the hardship requirement in §1229b(b)(1).

The Government's final argument is one this Court already rejected in *Guerrero-Lasprilla*: that a primarily factual mixed question is a question of fact. Such a rule would

require a court of appeals evaluating its jurisdiction to determine in every instance whether a particular legal standard presented a primarily factual or primarily legal inquiry. Nothing in §1252(a)(2)(D) or its statutory context suggests that "questions of law" is so limited. See 589 U. S., at 227–228. This Court declined to require the courts of appeals to engage in that complex line-drawing exercise in *Guerrero-Lasprilla*, and it declines to do so here.

\* \* \*

Today's decision announces nothing more remarkable than the fact that this Court meant what it said in *Guerrero-Lasprilla*: Mixed questions of law and fact, even when they are primarily factual, fall within the statutory definition of "questions of law" in §1252(a)(2)(D) and are therefore reviewable. That holding does not render §1252(a)(2)'s jurisdiction-stripping provisions meaningless. As this Court said in *Guerrero-Lasprilla* and reiterated in *Patel*, those provisions still operate to exclude "agency fact-finding from review." *Guerrero-Lasprilla*, 589 U. S., at 234–235; *Patel*, 596 U. S., at 339 ("[J]udicial review of factfinding is unavailable"). The facts underlying any determination on cancellation of removal therefore remain unreviewable. For instance, an IJ's factfinding on credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides remain unreviewable. Only the question whether those established facts satisfy the statutory eligibility standard is subject to judicial review.[4] Because this mixed question is primarily factual, that review is deferential.

For these reasons, the Court reverses the Third Circuit's

---

[4] Similarly, if the IJ decides a noncitizen is *eligible* for cancellation of removal at step one, his step-two discretionary determination on whether or not to *grant* cancellation of removal in the particular case is not reviewable as a question of law.

"jurisdictional" decision, vacates its judgment, and re-
mands the case for further proceedings consistent with this
opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

―――――――

No. 22–666

―――――――

## SITU KAMU WILKINSON, PETITIONER *v.* MERRICK B. GARLAND, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[March 19, 2024]

JUSTICE JACKSON, concurring in the judgment.

The Immigration and Nationality Act plainly constrains judicial review of discretionary-relief determinations. It first strips courts of jurisdiction to review "any judgment regarding the granting of relief" under provisions including 8 U. S. C. §1229b, which governs cancellation of removal. See §1252(a)(2)(B)(i). Then, the Act restores judicial review for only a subset of claims—"constitutional claims or questions of law" raised in a petition for review in the courts of appeals. §1252(a)(2)(D). Through these provisions, Congress made clear that courts should play a minimal role in the discretionary-relief process.

In *Guerrero-Lasprilla* v. *Barr*, 589 U. S. 221 (2020), the Court interpreted the phrase "questions of law" in §1252(a)(2)(D) to include mixed questions of law and fact, *i.e.*, "the application of a legal standard to undisputed or established facts." *Id.*, at 225. Today, the Court removes any doubt that the phrase "questions of law" encompasses *all* mixed questions, even those that are "primarily factual." *Ante,* at 15. Thus, an immigration judge's determination that a "noncitizen's removal would result in 'exceptional and extremely unusual hardship'" presents a judicially reviewable mixed question. *Ante,* at 1 (quoting §1229b(b)(1)(D)). Pointing to our precedent, the Court holds that "*Guerrero-Lasprilla* compels this conclusion."

*Ante*, at 11.

I am skeptical that Congress intended "questions of law" as used in §1252(a)(2)(D) to sweep so broadly, given the statutory scheme. The legislative history of the provision, though not conclusive, provides additional evidence to the contrary. See H. R. Conf. Rep. No. 109–72, p. 175 (2005) (noting that "[t]he purpose" of the provision was "to permit judicial review over . . . constitutional and *statutory-construction questions*, not discretionary or factual questions" (emphasis added)). As the dissent observes, under a maximalist reading of "questions of law," the exception to limited judicial review is poised to swallow the rule. See *post*, at 2–4 (opinion of ALITO, J.). If that reading is correct, Congress went through an awful lot to achieve relatively little.

I had not yet joined the Court when it decided *Guerrero-Lasprilla*. But I agree that *Guerrero-Lasprilla* controls this case. The fundamental principle of *stare decisis*—"that today's Court should stand by yesterday's decisions"—has "enhanced force" when a decision interprets a statute. *Kimble* v. *Marvel Entertainment, LLC*, 576 U. S. 446, 455–456 (2015). Congress remains free to revise the statute, and it should do so if we have strayed from its intent concerning the scope of judicial review set forth in §1252(a)(2)(D).

I concur in today's judgment with the understanding that the jurisdiction-stripping provision is not "meaningless." *Ante,* at 15. When reviewing denials of discretionary relief, courts should respect the choice of Congress, reflecting the will of the People, to limit judicial interference. Courts cannot review the facts underlying a hardship determination in the cancellation-of-removal context, and they should carefully distinguish between application of the "exceptional and extremely unusual hardship" legal standard, such as it is, and those unreviewable facts.

# SUPREME COURT OF THE UNITED STATES

———————

No. 22–666

———————

## SITU KAMU WILKINSON, PETITIONER *v.* MERRICK B. GARLAND, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[March 19, 2024]

CHIEF JUSTICE ROBERTS, dissenting.

I joined the opinion of the Court in *Guerrero-Lasprilla* v. *Barr*, 589 U. S. 221 (2020), and continue to believe that it was correctly decided. I agree with JUSTICE ALITO's dissent in this case, however, that the Court errs in reading the language in *Guerrero-Lasprilla* "as broadly as possible," indeed "to the outer limits of its possible reach." *Post*, at 6, 5. Nothing in *Guerrero-Lasprilla* requires such a reading, and I accordingly join JUSTICE ALITO's dissent.

# SUPREME COURT OF THE UNITED STATES

———

No. 22–666

———

## SITU KAMU WILKINSON, PETITIONER *v.* MERRICK B. GARLAND, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[March 19, 2024]

JUSTICE ALITO, with whom THE CHIEF JUSTICE and JUSTICE THOMAS join, dissenting.

In the 1996 Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), 110 Stat. 3009–546, Congress sought to control illegal immigration and streamline the procedures for removing illegal aliens who had been convicted of criminal offenses. A key provision of the Act is 8 U. S. C. §1252(a)(2)(B)(i), which provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting" of certain forms of discretionary relief. After IIRIRA's enactment, this Court flagged a "substantial constitutional questio[n]" that would arise if federal habeas courts were stripped of jurisdiction to review "pure question[s] of law." *INS* v. *St. Cyr*, 533 U. S. 289, 300 (2001). Congress responded by enacting an amendment clarifying that §1252(a)(2)(B) did not "preclud[e] review of constitutional claims or questions of law." §1252(a)(2)(D).

## I

In *Guerrero-Lasprilla* v. *Barr*, 589 U. S. 221 (2020), this Court addressed the meaning of this amendment. The case concerned two criminal aliens who were ordered removed and then failed to ask to have their removal proceedings reopened by the 90-day statutory deadline. They argued, however, that the deadline should be equitably tolled. The

Board of Immigration Appeals (BIA) rejected that argument, and the issue before us was whether the Court of Appeals had jurisdiction to review such a decision under §1252(a)(2)(B) and §1252(a)(2)(D).

The answer to that question depended on whether the correctness of the BIA's decisions was a "questio[n] of law" within the meaning of §1252(a)(2)(D). The aliens urged us to decide the case on "narrow grounds." Brief for Petitioners in *Guerrero-Lasprilla* v. *Barr*, O. T. 2019, No. 18–776 etc., p. 15. They did not dispute the relevant facts, see 589 U. S., at 226, but argued that the BIA had applied the wrong legal test in holding that they had not acted with sufficient diligence to justify equitable tolling—specifically, that the BIA had demanded a demonstration of "'maximum feasible diligence'" rather than "'reasonable diligence,'" which they claimed was the right test. Brief for Petitioners in *Guerrero-Lasprilla*, at 15.

The Court ruled for the aliens and in doing so stated broadly that "questions of law" include all questions that involve the application of the law to a particular set of facts. 589 U. S., at 228. Under this statement, the phrase "questions of law" has a stunning sweep. It encompasses all sorts of discretionary rulings that depend almost entirely on the relevant facts, as a few examples of mundane trial court rulings illustrate. For one, take a trial court's denial of a request for a continuance or a decision about the length of a trial day or the days of the week during which a jury is required to sit. See *Morris* v. *Slappy*, 461 U. S. 1, 11 (1983). Such decisions are governed by a legal standard, albeit a very permissive one: the decisions cannot be "unreasoning and arbitrary." *Ibid.* But in the rare case in which such a decision is reversed on appeal, the appellate court is unlikely to say that the trial court made an error of law because it mistakenly thought a continuance would be unreasonable and arbitrary. Instead, the question on appeal would almost certainly be based on an assessment of the

facts.

Here is another example. Under the broad language of *Guerrero-Lasprilla*, juries decide questions of law whenever they return a verdict in a criminal or civil case. If, for example, a jury in a criminal case finds that a defendant violated a statute that requires "knowing" conduct, the jury decides a question of law because it applies the law (as set out in the court's instructions on the meaning of "knowing" conduct, see, *e.g.*, 2B K. O'Malley, J. Grenig, & W. Lee, Federal Jury Practice and Instructions, Criminal §70:07 (6th ed. 2010), to the facts as they see them. Likewise, in a routine negligence case, the jury applies the law (as explained in the court's instructions on the meaning of "negligence," see, *e.g.*, 3A *id.*, Civil §155:30 (2012), to the facts shown at trial.

When Congress responded to *St. Cyr* by enacting §1252(a)(2)(D), did it mean to adopt this maximalist understanding of "questions of law"? *St. Cyr* never suggested that Congress was obligated to go that far, and if Congress had wanted to achieve the end that results from the Court's broad statements in *Guerrero-Lasprilla*, Congress might as well have repealed §1252(a)(2)(B) outright. Under the *Guerrero-Lasprilla* formulation, the net effect of §1252(a)(2)(B) and §1252(a)(2)(D) is as follows. Before the enactment of those provisions, pure findings of fact were subject to review, but under a very deferential standard—namely, they could be overturned only if "'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Nasrallah* v. *Barr*, 590 U. S. 573, 584 (2020). Afterwards, pure findings of fact were not reviewable at all. Is it plausible that this pipsqueak of a change was Congress's cure for what it saw as undue delay in the conclusion of removal proceedings for criminal aliens? I hardly think so.

## II

I dissented in *Guerrero-Lasprilla* because I feared that the Court's sweeping language would lead to "absurd results in light of the statute's structure" and would "transform §1252(a)(2)(D)'s narrow exception into a broad provision permitting judicial review of all criminal aliens' challenges to their removal proceedings except the precious few that raise only pure questions of fact." 589 U. S., at 238, 240 (THOMAS, J., joined by ALITO, J., dissenting). Under this reading, "the exception" for "questions of law" "all but swallows the rule." *Id.*, at 241.

We are permitted to exercise at least a modicum of "'common sense'" when we interpret a statute, see *West Virginia* v. *EPA*, 597 U. S. 697, 722 (2022), and *Guerrero-Lasprilla'*s broad language defies common sense. If the Congress that enacted §1252(a)(2)(D) had wanted to bring about the result that the broad statements in *Guerrero-Lasprilla* suggest, it could have simply repealed §1252(a)(2)(B) and stated in §1252(a)(2)(D) that courts cannot review pure questions of fact. Qualifying the broad prohibition in §1252(a)(2)(D) by adding an exception that all but eliminates the prohibition would have been a very odd way of achieving that result. What the Court says that Congress did—combining the broad prohibition in §1252(a)(2)(B) with the nearly congruent exception in §1252(a)(2)(D)—would be the equivalent of a city council adopting an ordinance banning all dogs from a park with an exception for all dogs that weigh under 125 pounds. Or the council passes an ordinance prohibiting all persons from riding a bicycle without a helmet but then adopts an exception for all persons under the age of 90. When Congress enacted §1252(a)(2)(D), it was not engaging in such silliness.

## III

Accepting of the judgment in *Guerrero-Lasprilla*—that the BIA's understanding of the scope of equitable estoppel

is a question of law—does not require that we take the language in the Court's opinion to the outer limits of its possible reach. But that is what the Court has now done. As Justice Breyer, the author of the opinion in *Guerrero-Lasprilla*, recognized in an earlier opinion for the Court, the concept of a question of law does not always encompass all applications of the law to a set of facts. In *Merck Sharp & Dohme Corp.* v. *Albrecht*, 587 U. S. 299 (2019), the decision hung on the question whether the Food and Drug Administration would have approved a change in a drug's label. The Court recognized that this question contained both legal and factual elements, but the Court did not hold that the question was one of law simply because it involved the application of law to a set of facts. *Id.*, at 316–318. Rather, the Court considered which element was most likely to be contested and asked whether the answer to the question whether the FDA would have approved the change would generally turn on a judgment about the law or the facts. *Ibid.*

If that same mode of analysis is applied here, the answer is clear—and it is the opposite of the one given by the Court. Whether "removal would result in exceptional and extremely unusual hardship" to the "spouse, parent, or child" of the alien subject to removal is *overwhelmingly* a question of fact. §1229b(b)(1)(D). The only legal component consists of the meaning of the everyday terms "hardship," "exceptional," and "unusual."

The facts of this case illustrate the degree to which the factual element involved in the question at hand overwhelms the slim legal component. Below, petitioner argued that the Immigration Judge misunderstood "the depth of the emotional relationship between Petitioner and his Child," the amount of "care and support that Petitioner's Child would receive if Petitioner is removed," and "the Child's uncommon and difficult situation, in light of his family's unwillingness to provide him access to care for his

mental health needs." Brief for Petitioner in No. 21–3166 (CA3), pp. 16–17. All those issues are entirely factual, and there is no legal principle that can help an immigration judge, the BIA, or a court assess whether any "hardship" resulting from petitioner's removal would be "exceptional and extremely unusual." That question must be decided by the application of what the decision-maker knows from experience about human nature and family relationships. Consequently, the question should not be classified as a "question of law" under §1252(a)(2)(D).

The Court, however, reads *Guerrero-Lasprilla* as broadly as possible. As it sees things, all "[m]ixed questions" are "questions of law," even if they are "primarily factual." *Ante*, at 15. And since the question here is overwhelmingly factual, what the Court seems to mean by "primarily" is anything that falls short of 100%.

That is not what Congress meant when it enacted §1252(a)(2)(B) and §1252(a)(2)(D), and I therefore respectfully dissent.